**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: <br><br> JOSE L RODRIGUEZ RUIZ and <br> JO ANNE VAZQUEZ RODRIGUEZ, <br><br>     Debtors. <br><br> ─────────────────── <br><br> JOSE L RODRIGUEZ RUIZ and <br> JO ANNE VAZQUEZ RODRIGUEZ, <br><br>     Plaintiffs, <br><br>     v. <br><br> JUNTA DE RETIRO DEL GOBIERNO DE <br> PUERTO RICO, et al. <br><br>     Defendants. | CASE NO. 15-07632-MAG7 <br><br> Chapter 7 <br><br><br><br> ADV. PROC. NO. 16-00205 <br><br><br><br> <span style="color:red">FILED & ENTERED ON 02/20/2025</span> |

**<u>OPINION AND ORDER</u>**

Pending before the court is a motion to dismiss the Amended Complaint brought by Junta de Retiro de Gobierno de Puerto Rico ("Defendant"), the opposition thereto filed by Jose L. Rodriguez Ruiz and Jo Anne Vazquez Rodriguez's (collectively "Plaintiffs"), and Defendant's reply to Plaintiffs' opposition. (Adv. Dkt. ## 105, 112, 115.) Plaintiffs' Amended Complaint alleges that Defendant violated the automatic stay and the discharge injunction and requests damages and injunctive relief. Defendant argues that Plaintiffs' claims are barred by Defendant's confirmed Plan of Adjustment under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2101 et seq. ("PROMESA") and that this court lacks subject matter jurisdiction to consider them. Plaintiffs argue that all claims in the Amended Complaint are subject to this court's jurisdiction. For the reasons stated herein, Defendant's motion to

dismiss is partially granted. Plaintiffs' claims for judgment and injunctive relief requiring

Defendant's Administrator to disburse the full amount of Plaintiffs' pension contributions and

for judgment declaring that Defendant violated the automatic stay are dismissed.

## I.     FACTS AND PROCEDURAL BACKGROUND

### A. Plaintiffs' Bankruptcy Petition

On September 30, 2015, Plaintiffs filed a voluntary petition under chapter 7 of the

Bankruptcy Code, which was docketed as case number 15-07632. (Bankr. Dkt. # 1.) Plaintiffs

included Defendant in schedule D with a claim in the amount of $96,980.30 secured by a

property located at Urbanización Villa Pinares in Vega Baja (the "Property"). (Id. at p. 17.)

Plaintiffs intended to surrender the Property to Defendant per the Statement of Intention. (Id. at

p. 37.)

On October 22, 2015, Defendant filed proof of claim number 2 in the secured amount of

$93,155.07 for a mortgage loan. (Claims Register # 2-1.) Defendant included a statement as to its

claim being also "guaranteed by the contributions, in the case of employee participants, and by

the pension fund in the case of retired beneficiaries" and being neither dischargeable nor subject

to the automatic stay. (Claims Register # 2-1, Part 2, p. 2.)

On November 2, 2015, Defendant filed proof of claim number 3 in the secured amount of

$4,862.65 and included the same statement included in proof of claim number 2. (Claims

Register # 3-1.)

On April 18, 2016, Plaintiffs received a discharge and the case was closed. (Bankr. Dkt.

## 27, 28.)

On May 23, 2016, Plaintiffs moved the court to reopen the bankruptcy case to file the captioned adversary proceeding. (Bankr. Dkt. # 31; Adv. Dkt. # 1.) On June 10, 2016, the court reopened the bankruptcy case. (Bankr. Dkt. # 33.)

**B. The Adversary Proceeding and Stay Thereof**

On September 16, 2016, Plaintiffs filed a complaint (the "Original Complaint") against the Police Department of Puerto Rico, the Department of Justice of Puerto Rico, the Administration of Retirement Systems for Public Employees of the Commonwealth of Puerto Rico ("ARS")[1], and the Puerto Rico Commonwealth Employees Association ("AEELA"). (Adv. Dkt. # 1.) The Original Complaint was brought under 11 U.S.C. §§ 105, 362, and 524 for contempt and damages for violation of the automatic stay and of the discharge injunction "for the illegal retention of wages and wrongful deduction of monthly amounts from paycheck for the purpose of collecting payment of unsecured discharged debt arising from an unperfected mortgage contract related to a surrendered property." (Id. at p. 1.)

On March 28, 2017, the Original Complaint was dismissed as to AEELA. (Adv. Dkt. # 41.)

On May 23, 2017, after various procedural events, the Department of Justice of the Commonwealth of Puerto Rico on behalf of the Police Department filed a notice of commencement of case under Title III of PROMESA and of automatic stay of proceedings (the "Notice of Title III Proceedings"). (Adv. Dkt. # 44.) The Notice of Title III Proceedings informed that on May 3, 2017, the Financial Oversight and Management Board (the "Oversight Board") filed a petition for relief under Title III of PROMESA on behalf of the Commonwealth

---

[1] This entity is known in the Spanish language as "Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura." The official translation of the name of this entity per its Title III petition for relief under PROMESA is "Employees Retirement System of the Government of the Commonwealth of Puerto Rico."

of Puerto Rico and requested the case to be stayed pursuant to 11 U.S.C. §§ 362(a) and 922(a), as incorporated by reference under 48 U.S.C. § 2161(a).

On August 18, 2017, the court entered an order staying the captioned adversary proceeding. (Adv. Dkt. # 46.)

### C. ARS' Title III Case under PROMESA

On May 3, 2017, the Oversight Board filed a petition for relief under Title III of PROMESA on behalf of the Commonwealth of Puerto Rico, which was docketed as bankruptcy case number 17-03283 (the "Commonwealth Title III Case").

On May 21, 2017, the Oversight Board filed a petition for relief under Title III of PROMESA on behalf of ARS, which was docketed as bankruptcy case number 17-03566 (the "Defendant's Title III Case").

On June 29, 2017, the court ordered the joint administration of Defendant's Title III Case with the Commonwealth Title III Case and other related cases and stated that such cases are consolidated for procedural purposes only. (Bankr. Case No. 17-03566, Dkt. # 156.)

On January 14, 2022, the Commonwealth of Puerto Rico, Defendant, and other affiliated debtors filed a "Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al." (the "Plan of Adjustment"). (Bankr. Case No. 17-03283, Dkt. # 19,784.)

On January 18, 2022, the court entered an order confirming the Plan of Adjustment (the "Order Confirming Plan of Adjustment"). (Bankr. Case No. 17-03283, Dkt. # 19,813.)

On March 15, 2022, the Commonwealth of Puerto Rico, Defendant, and other affiliated debtors filed a notice informing that the effective date of the Plan of Adjustment occurred on

4

even date and that such Plan was substantially consummated. (Bankr. Case No. 17-03283, Dkt. # 20,349.)

### D. Continuation of Adversary Proceeding

On November 20, 2022, co-plaintiff Jo Anne Vazquez Rodriguez ("Ms. Vazquez") sent an ex-parte motion titled in Spanish "Moción Informativa y de Solicitud de Reapertura de Caso Adversativo para su Culminación" to the email address for emergency filings of the U.S. Bankruptcy Court for the District of Puerto Rico requesting the court to continue proceedings regarding the Original Complaint.

On November 22, 2022, the court entered an order denying such motion because it was filed in the Spanish language, it failed to comply with procedural requirements, it failed to provide adequate notice to the defendants, and it failed to state a legal basis for the remedy being requested. (Bankr. Dkt. # 38, Adv. Dkt. # 54.)

On March 3, 2023, Ms. Vazquez sent another motion to the email address for emergency filings of the U.S. Bankruptcy Court for the District of Puerto Rico titled "Informative Motion and Request for Reopening of Adversary Case for its Completion." (Bankr. Dkt. # 40, Adv. Dkt. # 56.)

On March 15, 2023, the court entered an order denying Ms. Vazquez's motion because it failed to comply with procedural requirements, it failed to provide adequate notice to the defendants, and it failed to state a legal basis for the remedy being requested. (Bankr. Dkt. # 41, Adv. Dkt. # 57.) The court noted that the adversary proceeding was stayed upon the Commonwealth Title III Case and Defendant's Title III Case.

Also on March 15, 2023, the court entered the following order:

> The adversary proceeding of caption was filed on September 16, 2016 and was stayed on August 18, 2017 upon the filing by the Commonwealth of Puerto Rico

5

and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico of a petition for debt adjustment relief under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. 2101 et seq. ("PROMESA"), case no. 17-03283 with the U.S. District Court for the District of Puerto Rico (the "Title III Case"). See Dkts. 1, 44, 46. The court in the Title III case entered an order dated January 18, 2022 (the "Order Confirming Title III Plan") confirming the Modified Eighth Amended Title III Plan of Adjustment of the Commonwealth of Puerto Rico, et al., dated January 14, 2022. See Title III Case, Dkts. 19784, 19813. The confirmed plan includes the discharge of any and all claims that arose prior to the effective date, except as provided therein, and an injunction and supplemental injunction that stays, restrains, and enjoins any individual or entity from taking any action against the Reorganized Debtors (as defined therein) for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims (as defined therein) arising prior to the effective date. See Title III Case, Dkt, 19784, pp. 193-196; 200-201. The effective date was March 15, 2022. See Title III Case, Dkt. 20349. Thus, the effective date occurred after the filing of this case. In light of the foregoing, the Plaintiffs are ordered to show cause within 21 days as to why this case should not be dismissed with prejudice upon the entry of the Order Confirming Title III Plan and the occurrence of the effective date.

(Adv. Dkt. # 58.)

On June 20, 2023, Plaintiffs filed their response to order to show cause and opposition to dismissal of complaint. (Adv. Dkt. # 71.) Plaintiffs stated that they were unable to argue the court's query regarding the effect of the discharge and acknowledged that if Plaintiffs' claims arose prior to the effective date of the confirmed Plan of Adjustment under Title III of PROMESA, they are in fact restrained and enjoined from taking action against Defendant. (Id. at p. 2.) However, Plaintiffs argued that the case should not be dismissed because there is "just cause" to continue the proceedings as the Defendant's actions have not ceased and continue after the effective date. They requested the court to consider the complaint amended to include "the same illegal, ongoing and improper actions by [Defendant]". (Id. at p. 4.)

On July 7, 2023, the court scheduled a status conference for August 18, 2023. (Adv. Dkt. # 72.)

6

On August 16, 2023, Defendant appeared in this case through new counsel and clarified that the entity previously known as ARS is now known as "Junta de Retiro del Gobierno de Puerto Rico." (Adv. Dkt. # 74.)

On August 16, 2023, Defendant filed a motion for continuance of the status hearing stating that the parties conferred and agreed to discuss settlement alternatives. (Adv. Dkt. # 75.)

On August 17, 2023, the court entered an order vacating and setting aside the status conference and ordered the parties to file a settlement agreement or otherwise inform the court of the status negotiations within forty-five days. (Adv. Dkt. # 76.)

On October 22, 2023, Plaintiffs' counsel filed a motion to withdraw her legal representation. (Adv. Dkt. # 79.) On November 1, 2023, the court entered an order granting such motion to withdraw, granting Plaintiffs thirty days to retain counsel or else be deemed pro se, and granting the parties a new term of forty-five days to file a settlement agreement or otherwise inform the court of the status of negotiations. (Adv. Dkt. # 80.)

On December 15, 2023, new counsel appeared on behalf of Plaintiffs. (Adv. Dkt. # 82.)

On January 24, 2024, Plaintiffs filed a motion to inform that settlement conversations between the parties have not progressed and requested the court to retain jurisdiction to consider the alleged ongoing violation of the discharge injunction. (Adv. Dkt. # 84.)

On February 21, 2024, the court granted Defendant fourteen days to state a position as to Plaintiffs' motion to inform, which Defendant failed to do. (Adv. Dkt. # 85.)

On April 3, 2024, the court scheduled a status conference for May 7, 2024. (Adv. Dkt. # 90.)

On May 7, 2024, the court held the status conference in which Plaintiffs and Defendant appeared and argued their respective positions. (Adv. Dkt. # 90.) Plaintiffs requested the court

leave to amend the complaint considering that there were significant new facts. The court encouraged the parties to carefully examine the facts of this case and their respective legal arguments and meet to try to reach an amicable solution considering that the case has been pending since 2016 and litigation would undoubtedly be costly for both sides. As such, the parties were ordered to meet and engage in settlement negotiations and file a report within thirty days informing the court of the outcome of such negotiations. (Id.)

On June 20, 2024, Plaintiffs informed the court that the parties have not reached an agreement. (Adv. Dkt. # 98.)

### E. The Amended Complaint

On May 21, 2024, Plaintiffs filed a motion for leave to file amended complaint, which the court granted as unopposed on June 13, 2024. (Adv. Dkt. ## 93, 94.)

On July 3, 2024, Plaintiffs filed an amended complaint against Defendant (the "Amended Complaint"). (Dkt. # 99.) The Amended Complaint alleges the following: (1) Plaintiffs were public employees who obtained a mortgage loan from Defendant to purchase the Property; (2) Plaintiffs surrendered the Property in their bankruptcy case and vacated it for Defendant to proceed with foreclosure, but Defendant never foreclosed it and continued making deductions from Plaintiffs' payroll and has refused to pay them their benefits under the pension plan arguing that they also secure the loan; (3) Defendant's actions violated the automatic stay and violate the discharge injunction; (4) Plaintiffs filed a proof of claim in Defendant's Title III Case regarding the collection of the mortgage loan installment payment, which was transferred to the "Administrative Dispute Resolution Proceeding (ADR)" and is now under "Offer and Exchange" status; and (5) Defendant has failed to comply with its confirmed Plan of Adjustment by not allowing Plaintiffs to withdraw their pension contributions. (Adv. Dkt. # 99.)

Plaintiffs request the court to grant the following relief in the Amended Complaint: (1) to enter judgment and injunctive relief requiring Defendant's Administrator to disburse the full amount of Plaintiffs' pension contributions as mandated by the confirmed Plan of Adjustment and pursuant to applicable state law; (2) to enter judgment declaring that Defendant violated the automatic stay and is in civil contempt and to award damages and attorney's fees; and (3) to enter judgment declaring that Defendant violated the discharge injunction and is in civil contempt and to award damages and attorney's fees. (Adv. Dkt. # 99, p. 15.)

### F. The Motion to Dismiss

On August 2, 2024, Defendant filed a motion to dismiss and on August 29, 2024, Plaintiffs filed their opposition thereto. (Adv. Dkt. ## 105, 112.) On September 18, 2024, Defendant filed a reply to Plaintiffs' opposition to motion to dismiss. (Adv. Dkt. # 115.)

## II. PARTIES' POSITIONS

### A. Defendant

Defendant argues in the motion to dismiss that Plaintiffs' claims were discharged pursuant to the confirmed Plan of Adjustment and that Plaintiffs are enjoined from continuing with their claims in the captioned adversary proceeding. Furthermore, Defendant argues that the new claims in the Amended Complaint regarding Defendant's alleged default with the confirmed Plan of Adjustment by failing to disburse Plaintiffs' pension contributions are non-core matters, and the court lacks subject matter jurisdiction to consider them. Therefore, dismissal is warranted under Fed. R. Civ. P. 12(b)(1), made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7012. (Adv. Dkt. ## 105, 115.)

### B. Plaintiffs

Plaintiffs argue that their discharge injunction mandates "the immediate release of Plaintiffs['] retirement funds, funds belonging to them and over which Defendant[] cannot legally claim any rights, possessory or otherwise" and that Plaintiffs' rights regarding their pension benefits are recognized in Defendant's Plan of Adjustment. Plaintiffs' position is that the Defendant only had a right to in rem foreclosure of the Property and their personal liability was discharged. As such, Defendant violated the automatic stay, the discharge injunction, and continues to violate the discharge injunction by deducting mortgage payments from their pension benefits and by failing to allow them to withdraw their pension benefits. Moreover, Plaintiffs argue that Defendant's confirmed Plan of Adjustment mandates the liquidation of their pension benefits and Defendant has failed to comply with the provisions thereof. Plaintiffs assert that all claims raised in the Amended Complaint are core proceedings and that such Amended Complaint also brings to the court's attention their rights under the confirmed Plan of Adjustment which are "intrinsically related" to Defendant's "refusal to release the retirement funds of the Plaintiffs, which they have been trying to access since 2018. . . ." (Adv. Dkt. # 112.)

## III.   LEGAL ISSUES

(i) Whether the court has subject matter jurisdiction to consider the claims in the Amended Complaint; and

(ii) Whether Defendant's Plan of Adjustment bars any or all claims in the Amended Complaint.

## IV.   APPLICABLE LAW

### (i) Subject Matter Jurisdiction and Dismissal under Fed. R. Civ. P. 12(b)(1)

Defendant argues that the court lacks subject matter jurisdiction to consider Plaintiffs' claims. Fed. R. Civ. P. 12(b)(1), made applicable to adversary proceedings by Fed. R. Bankr. P.

7012(b), requires the court to dismiss the complaint if it lacks subject matter jurisdiction to hear the dispute. When considering dismissing a complaint under Fed. R. Civ. P. 12(b)(1), the court must "construe the [c]omplaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). Moreover, "the court may consider documents outside the pleadings, such as exhibits and affidavits attached to the motion to dismiss, and the opposition." Mercado Arocho v. United States, 455 F. Supp. 2d 15, 17 (D.P.R. 2006). Dismissal under Fed. R. Civ. P. 12(b)(1) is "proper if the facts alleged reveal a jurisdictional defect not otherwise remediable." Grillasca-Palou v. United States Postal Serv., 573 F. Supp. 2d 493, 494 (D.P.R. 2008).

"The jurisdiction of the bankruptcy court, like that of any other federal court, is limited by statute." In re Caribbean Petroleum Corp., 443 B.R. 560, 564 (Bankr. D.P.R. 2010). Pursuant to 11 U.S.C. § 1334(b), "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Id. District courts, in turn, may refer to bankruptcy judges "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . ." 28 U.S.C. § 157. These types of proceedings "arising under", "arising in", and "related to" Title 11 "are further delineated as 'core' or 'non-core.'" In re Caribbean Petroleum Corp., 443 B.R. at 564.

"[C]ore proceedings are those that arise in a bankruptcy case or under Title 11. The detailed list of core proceedings in § 157(b)(2) provides courts with ready examples of such matters." Stern v. Marshall, 564 U.S. 462, 476 (2011). Proceedings "arise under" Title 11 "when the Bankruptcy Code itself creates the cause of action." Gupta v. Quincy Med. Ctr., 858 F.3d 657, 662 (1st Cir. 2017). Proceedings "arise in" Title 11 when they "are not based on any right

11

expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." Id. at 662–63 (quoting In re Middlesex Power Equip. & Marine, Inc., 292 F.3d 61, 68 (1st Cir. 2002)).

"Proceedings merely 'related to' a case under title 11 are considered "non-core" proceedings." Gupta v. Quincy Med. Ctr., 858 F.3d at 662 n. 5. "Related to" proceedings "are those 'which potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate.'" Gupta v. Quincy Med. Ctr., 858 F.3d at 663 (quoting In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68).

**(ii) Jurisdiction of Title III Cases**

Section 306 of PROMESA provides that district courts shall have original and exclusive jurisdiction of all Title III cases and "original but not exclusive jurisdiction of all civil proceedings arising under this subchapter, or arising in or related to cases under this subchapter." 48 U.S.C. § 2166(a).

The confirmed Plan of Adjustment provides that the U.S. District Court for the District of Puerto Rico shall retain and have exclusive jurisdiction over any matter "arising under PROMESA, arising in or related to, the Title III Cases and the Plan." Among these matters are those "to resolve any cases, controversies, suits, disputes or other challenges of any kind that may arise in connection with the consummation, interpretation or enforcement of the Plan," "to adjudicate, decide or resolve any matters relating to the Debtors' compliance with the Plan and the Confirmation Order consistent with section 945 of the Bankruptcy Code", and "to determine any other matters that may arise in connection with or relate to the Plan . . . ." (Bankr. Case No. 17-03283, Dkt. # 19,784, pp. 190-191.)

12

**(iii) Discharge of Claims and Injunction pursuant to the Plan of Adjustment**

Section 92.2 of the Plan of Adjustment provides in its relevant part the following

regarding the discharge and release of claims and causes of action:

(a) Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action . . . .**Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan** . . . .

(b) Except as expressly provided in the Plan or the Confirmation Order, all Entities shall be precluded from asserting any and all Claims against the Debtors and Reorganized Debtors, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets and property, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, **the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtors and the Reorganized Debtors pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtors or Reorganized Debtors and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability.** As of the Effective Date, and in consideration for the value provided under the Plan, each holder of a Claim in any Class under this Plan shall be and

13

hereby is deemed to release and forever waive and discharge as against the Debtors and Reorganized Debtors, and their respective Assets and property and all such Claims.

(Bankr. Case no. 17-03283, Dkt. # 19,784, pp. 193-194) (emphasis ours). See also, Order

Confirming Plan of Adjustment, Dkt. # 19,813, pp. 60-62. In the same vein, Section 92.3 of the

Plan of Adjustment provides in its relevant part the following regarding the Plan's injunction on

claims:

Except as otherwise expressly provided in the Plan, the Confirmation Order or such other Final Order of the Title III Court that is applicable, **all Entities who have held, hold or in the future hold Claims or any other debt or liability that is discharged or released pursuant to Section 92.2 hereof or who have held, hold or in the future hold Claims or any other debt or liability discharged or released pursuant to Section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property,** (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property. . . .

(Bankr. Case No. 17-03283, Dkt. # 19,784, p. 196) (emphasis ours). See also, Order Confirming

Plan of Adjustment, Dkt. # 19,813, pp. 67-68.

"A review of the relevant orders in the Title III Case shows that both the Plan and the

Confirmation Order include a discharge and an injunction that supersedes PROMESA's

14

automatic stay." <u>Villalobos-Santana v. Puerto Rico Police Bureau</u>, 2024 WL 3152641, at *3 (D.P.R. June 5, 2024). Such injunction "permanently bars all claims discharged pursuant to paragraphs 56 and 59 of the Confirmation Order and Section 92.2 of the Plan." <u>Id</u>. Even if a claim arose after the filing of Defendant's Title III Case, "the Plan clearly states that 'the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts **that arose**, in whole or in part, **prior to the Effective Date**.'" <u>Id</u>. (quoting <u>In re Financial Oversight and Management Board for Puerto Rico</u>, 650 B.R. 286, 293 (D.P.R. 2022)).

The Plan of Adjustment's effective date is March 15, 2022. <u>Id</u>. <u>See</u> <u>also</u>, Bankr. Case No. 17-03283, Dkt. # 20,349.

The Plan of Adjustment "provides that '[a]ll injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms'— which is to say permanently, unless modified by [the] Court." <u>In re Fin. Oversight & Mgmt. Bd. for Puerto Rico</u>, 650 B.R. at 296 (quoting the Plan of Adjustment, Bankr. Case No. 17-03283, Dkt. # 19,784, p. 206).

## V.   DISCUSSION

With the foregoing legal framework, the court will proceed to discuss each of Plaintiffs' claims in the Amended Complaint and whether dismissal is warranted for the reasons stated by Defendant.

> **(i)  Request to enter judgment and injunctive relief requiring Defendant's Administrator to disburse the full amount of Plaintiffs' pension contributions as mandated by the confirmed Plan of Adjustment and pursuant to applicable state law. (Adv. Dkt. # 99, p. 15, ¶¶ 1, 2).**

Plaintiffs request the court to enter judgment and injunctive relief requiring Defendant's Administrator to disburse their pension contributions pursuant to the provisions of the confirmed

15

Plan of Adjustment and under applicable state law. This court lacks jurisdiction to enter such judgment for two reasons.

First, as stated above, the U.S. District Court for the District of Puerto Rico is the court with exclusive jurisdiction of Defendant's Title III case. Such court has original but not exclusive jurisdiction of all proceedings arising under, arising in, or related to Defendant's Title III Case, which undoubtedly include matters related to the confirmed Plan of Adjustment. The court expressly retained jurisdiction in the Plan of Adjustment to consider any matter or dispute to enforce the provisions thereunder. Consequently, this court does not have subject matter jurisdiction to enforce the terms of the confirmed Plan of Adjustment.

Second, the bankruptcy estate in Plaintiff's Chapter 7 petition was fully administered, Plaintiffs received a discharge, and the case was closed. As such, and as acknowledged by Plaintiffs, the bankruptcy estate no longer exists and any judgment for monies would be for the sole benefit of Plaintiffs and not for the inexistent bankruptcy estate or creditors. See Dkt. # 112, p. 17, ¶ 55. This claim does not arise under Title 11 because it is not a cause of action created by the Bankruptcy Code itself and does not arise in a case under Title 11 because it would survive outside of bankruptcy. Therefore, the court may only have subject matter jurisdiction if this claim falls within the "related to" jurisdiction set forth in 28 U.S.C. § 1334(b). Such jurisdiction requires some effect on the bankruptcy estate, which does not exist at this juncture. See In re Surprise, 443 B.R. 258, 262 (Bankr. D. Mass. 2011) (ruling that third-party complaint had to be dismissed because any recovery would go to plaintiff alone and "[n]o rights would be created for the benefit of the estate or would impact the claims against the estate.") See also, In re DeMarco, 454 B.R. 343, 347 (Bankr. E.D. Pa. 2011) ("It is generally recognized that upon entry of a report of no distribution, a bankruptcy court is divested of its related-to jurisdiction.")

Therefore, the court finds that it lacks subject matter jurisdiction as to Plaintiffs' first claim.

**(ii) Request to enter judgment declaring that Defendant violated the automatic stay and is in civil contempt and to award damages and attorney's fees (Adv. Dkt. # 99, p. 15, ¶¶ 3, 4, 5).**

Plaintiff's second claim falls squarely within this court's subject matter jurisdiction and is a core proceeding. See In re Providence Hosp. of N. Houston LLC, 653 B.R. 612, 621 (Bankr. S.D. Tex. 2023) (ruling that an adversary proceeding for violation of the automatic stay invokes "substantive rights provided by the Bankruptcy Code" and therefore, the court had core jurisdiction over such proceeding.)

The automatic stay in Plaintiffs' Chapter 7 petition is no longer in effect. Pursuant to 11 U.S.C. § 362(c)(1), the automatic stay of an act against property of the estate under its subsection (a) terminates when such property is no longer property of the estate. In contrast, the automatic stay of any other act under § 362(a) terminates at the earliest of:

> (A) the time the case is closed;
> (B) the time the case is dismissed; or
> (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

11 U.S.C. § 362(c)(2). Plaintiffs received a discharge on April 18, 2016 and the case was closed on even date. (Bankr. Dkt. # 27, 28.) As such, the automatic stay terminated on April 18, 2016 and any violation thereof had to occur before such date.

The Plan of Adjustment provides that Defendant is deemed discharged and released from any and all claims, causes of action and any other debts that arose, in whole or in part, prior to the effective date, which was March 15, 2022. Therefore, Plaintiffs' claim for violation of the automatic stay was discharged and released under the Plan of Adjustment because such alleged

17

violation had to occur before the termination of the automatic stay in 2016, which was prior to the effective date of the Plan of Adjustment.

Several courts faced with the same dispute have ruled that the permanent injunction precludes Plaintiffs from prosecuting claims that were discharged in the Plan of Adjustment. See In re Zayas, 2024 WL 4125700, at *3 (Bankr. D.P.R. Sept. 9, 2024) (finding that "[t]he automatic stay violation alleged by the Plaintiff took place on March 31, 2020; a date before the effective date of the [PROMESA] plan on March 15, 2022" and consequently, the case was "subject to the permanent injunction of the order confirming the plan in the Commonwealth's Title III case."); Villalobos-Santana v. Puerto Rico Police Bureau, 2024 WL 3152641, at *4 ("Accordingly, the case is hereby permanently stayed, and plaintiffs are permanently enjoined from continuing with any such claims . . . unless and until the Court in the Title III Case modifies the injunction. The case is hereby administratively closed for statistical purposes.") In re Bernier, 2024 WL 1608580, at *4 (Bankr. D.P.R. Apr. 12, 2024) ("[T]he continuation of an action, as is the case here, against the Treasury Department is subject to the permanent injunction of the order confirming the plan in the Commonwealth's Title III case."); Velez-Molina v. Rivera Schatz, 2023 WL 6536235, at *4 (D.P.R. Sept. 29, 2023) ("[T]he Plan Injunction has deprived this court of jurisdiction. . . Accordingly, this case is stayed pending further order from the Title III Court. . . This case will be administratively closed for statistical purposes."); In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 650 B.R. at 296 ("Now that the Plan of adjustment for the Commonwealth has been confirmed and has become effective . . . Movant's Action and Appeal cannot be prosecuted because his claim has been discharged and is permanently subject to the Plan Injunction.")

This court adopts the reasoning as stated in the foregoing cases and finds that Plaintiffs are permanently enjoined by the terms of the Plan of Adjustment from prosecuting their second claim.

**(iii) Request to enter judgment declaring that Defendant violated the discharge injunction and is in civil contempt and to award damages and attorney's fees (Adv. Dkt. # 99, p. 15, ¶¶ 3, 4, 5).**

Plaintiffs' third claim is for violation of the discharge injunction and the alleged damages therefrom, which is within this court's core jurisdiction. See In re Trinidad, No. 21-03022 (ESL), 2022 WL 3363888, at *4 (Bankr. D.P.R. Aug. 12, 2022) ("[V]iolations of a discharge order are claims that "arise under" title 11 and fall under the bankruptcy court's jurisdiction.") As with Plaintiff's claim for violation of the automatic stay, the court finds that a claim for violation of discharge and damages therefrom that arose prior to the effective date of the Plan of Adjustment was also discharged by the Plan of Adjustment and Plaintiffs are enjoined from prosecuting it. However, the court will consider Plaintiffs' claim for Defendant's alleged violation of discharge for actions that occurred after the Plan of Adjustment's effective date.

Plaintiffs received a discharge on April 18, 2016, which precedes the effective date of the Plan of Adjustment. Plaintiffs stated that Defendant has continued to "illegally collect" from their retirement benefits, which it never ceased to do notwithstanding their bankruptcy petition and to withhold such benefits. This is the same claim made in the Original Complaint, except that Plaintiffs added that Defendant must liquidate their retirement benefits pursuant to the provisions of the Plan of Adjustment. The discharge and release of claims under the Plan of Adjustment applies to all claims, causes of action "and any other debts that arose, **in whole or in part**, prior to the Effective Date . . . ." (Bankr. Case no. 17-03283, Dkt. # 19,784, p. 193)

(emphasis ours). As stated above, claimants are permanently enjoined from continuing any discharged proceeding.

Plaintiffs stated that they retired from their government employment in 2018 and attempted to withdraw their pension funds "or the access of partial amounts throughout this year." (Adv. Dkt. # 112, p. 8.) Moreover, Plaintiffs filed two proofs of claims in Defendant's Title III Case, one of which is "regarding the collection of the mortgage loan installment payment. This claim was transferred to the Administrative Dispute Resolution Proceeding (ADR), which is now under 'Offer and Exchange' Status." (Adv. Dkt. ## 84 & 99 at p. 5.) Plaintiffs are enjoined from prosecuting the claim for violation of discharge and damages therefrom due to these actions under the Plan of Adjustment's permanent injunction as explained above.

However, Plaintiffs allege that Defendant's actions in violation of their discharge have continued post-effective date. As such, the court finds that they are not enjoined from prosecuting a claim for violation of discharge that arose after March 15, 2022, which is within this court's core jurisdiction.

Therefore, Defendant' request to dismiss the third cause of action is denied inasmuch as Plaintiffs may prosecute the alleged violation of discharge only for actions that occurred post-effective date of the Plan of Adjustment. The court will enter a separate order allowing the parties to file motions for summary judgment as to this claim, which appears to be mainly a matter of law and not of disputed facts.

## VI.  CONCLUSION

For the reasons stated above, Defendant's motion to dismiss (Adv. Dkt. # 105) is partially granted. A separate partial judgment dismissing the first and second claims, and partially the third will be entered accordingly.

IT IS SO ORDERED.

In Ponce, Puerto Rico, this 20th day of February, 2025.

María de los Ángeles González
United States Bankruptcy Judge